IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARVIN B. HULL,

        Plaintiff,

vs.                                    Case No. 12-1128-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On July 2, 2010, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 9-20). Plaintiff alleges that he has been disabled since February 2, 2007 (R. at 9). Plaintiff is insured for disability insurance benefits through

December 31, 2011 (R. at 11).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date of disability (R. at 11).  At step two, the ALJ found that plaintiff has the following severe impairments:  degenerative joint disease bilateral knees; status post lumbar spine surgery; obesity; depression; personality disorder; and a history of polysubstance use (R. at 12).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12).  After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 19).  At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 19-20).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III.  Did the ALJ err in his evaluation of the medical evidence?**

In her decision, the ALJ gave "significant" weight to the state agency medical assessments (R. at 17).  The physical RFC assessment was affirmed by Dr. Warren on January 29, 2009 (R. at 433-440, 442), and the mental RFC assessment was prepared by Dr. Blum on August 13, 2008 (R. at 429-431), and affirmed by Dr. Stern on January 27, 2009 (R. at 441).  The ALJ's RFC findings, with one exception (see footnote 2), incorporate all of the limitations in the two assessments (R. at 15).  The reliance by

5

the ALJ on these two assessments is made clear when examining the hypothetical question posed to the vocational expert (VE). The ALJ asked the VE to consider a person with the RFC to perform light work, except for the additional physical limitations noted in Exhibit 11F (Dr. Warren's assessment) and the mental limitations noted in Exhibit 10F (Dr. Blum's assessment) (R. at 287).[2]

Plaintiff argues that the ALJ erred by including broad mental limitations that are only considered at steps two and three of the sequential evaluation process (Doc. 17 at 4-5). According to SSR 96-8p:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process

---

[2]The physical RFC assessment opines that plaintiff can stand and/or walk for at least 2 hours in an 8 hour workday (R. at 434), while the ALJ's RFC finding was that plaintiff can stand and/or walk for about 6 hours in an 8 hour workday (R. at 15). However, in the hypothetical question to the vocational expert (VE), the ALJ asked the VE to assume a person with the physical limitations found in Exhibit 11F (Dr. Warren's assessment) and the mental limitations found in Exhibit 10F (Dr. Blum's assessment) (R. at 287). The VE, considering the more restrictive limit of plaintiff being able to stand and/or walk for at least 2 hours in an 8 hour workday, opined that plaintiff could perform the work which the ALJ adopted in his decision (R. at 293, 20). Therefore, on these facts, the court finds that the deviation in the ALJ's RFC findings from the physical assessment regarding plaintiff's ability to stand and/or walk is harmless error.

6

> requires a more detailed assessment by
> itemizing various functions contained in the
> broad categories found in paragraphs B and C
> of the adult mental disorders listings in
> 12.00 of the Listing of Impairments, and
> summarized on the PRTF.

1996 WL 374184 at *4. Thus, the PRTF form is used to determine the severity of a mental impairment at steps 2 and 3 of the sequential evaluation process, while a mental RFC assessment form is used to determine a claimant's RFC at steps 4 and 5.

The PRTF form is Exhibit 9F (R. at 415-427). However, the ALJ's RFC findings do not come from Exhibit 9F, but from the mental RFC assessment in Exhibit 10F. On that form, Dr. Blum found plaintiff moderately limited in the ability to understand, remember and carry out detailed instructions and moderately limited in the ability to interact appropriately with the general public. These findings are in Section I of the mental RFC assessment (R. at 429-430). Dr. Blum then indicated that plaintiff was able to understand simple and intermediate instructions, had moderate limitations on the concentration domain, moderate limitations in the social functioning domain, and mild limitations in the adaptation domain. Dr. Blum concluded by stating that plaintiff retains the ability for competitive level work with the limitations noted in the assessment. These findings are in Section III of the mental RFC assessment (R. at 431). The ALJ's mental RFC findings are

identical to the limitations noted by Dr. Blum in his mental RFC assessment (R. at 15, 429-431).  By contrast, the ALJ's RFC findings are not identical to the degree of limitation in the four categories included in the PRTF form (R. at 425).  The court finds no error when the ALJ included in her RFC findings all of the limitations noted in the 20 categories in Section I of the RFC assessment, and included in her RFC findings the limitations further noted on Section III of the RFC assessment.

On August 1, 2008, Dr. Smith, a psychologist, prepared a mental status exam on the plaintiff (R. at 386-388).  In his report, Dr. Smith stated that "because of problems with concentration and memory, he may have difficulty persevering on tasks" (R. at 388, emphasis added).  The ALJ stated that there is nothing in the record to support such difficulties (R. at 17).  Plaintiff argues that this assertion is not supported by the evidence (Doc. 17 at 5).  Certainly, Dr. Smith's report notes difficulties with concentration and memory (R. at 387-388).

Dr. Moeller's report also noted some degree of difficulty with attention/concentration and memory during the evaluation process (R. at 761, 762).  The ALJ gave some weight to Dr. Moeller's opinions (R. at 17).  Dr. Moeller found that plaintiff had "mild" limitations in the ability to understand, remember and carry out complex instructions, and in the ability to make

judgments on complex work related decisions (R. at 746). The ALJ found that plaintiff had "moderate" limitations in his ability to understand, remember and carry out detailed instructions (R. at 15). Thus, Dr. Moeller found that plaintiff had some degree of difficulty with attention/concentration and memory, and his specific findings of limitations are included in the ALJ's RFC findings.

Furthermore, Dr. Blum specifically noted Dr. Smith's finding that plaintiff may have some difficulty persisting with tasks (R. at 427). After taking the findings of Dr. Smith into account, and considering other evidence, Dr. Blum found that plaintiff had a number of moderate limitations, as set forth above, including a moderate limitation in concentration (R. at 431), and, under the general category of "sustained concentration and persistence," a moderate limitation in the ability to carry out detailed instructions (R. at 429). The ALJ included all of Dr. Blum's limitations in his RFC findings for the plaintiff.

Although the ALJ erred in stating that nothing in the record supported Dr. Smith's conclusion that plaintiff may have difficulty persevering on tasks because of problems with concentration and memory, the ALJ incorporated into her RFC findings limitations based on the reports of Dr. Moeller and Dr. Blum. Both Dr. Moeller and Dr. Blum noted that plaintiff had

9

difficulty in attention, concentration and memory before setting forth specific mental limitations for the plaintiff. Dr. Blum specifically noted Dr. Smith's findings, and included in his report a moderate limitation in concentration, and a moderate limitation in the ability to carry out detailed instructions under the general category of concentration and persistence. There is no medical evidence that Dr. Smith's general statement translates into specific limitations not contained in the opinions of Dr. Moeller or Dr. Blum, or limitations not contained in the ALJ's RFC findings. For this reason, the court finds that the statement of the ALJ that nothing in the record supports Dr. Smith's finding (because of problems with concentration and memory, he may have difficulty persevering on tasks) is harmless error.[3]

**IV. Did the ALJ err in her credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such

---

[3] In his reply brief, plaintiff for the first time points out that Dr. Blum's narrative states that plaintiff should be able to perform a job that does not require a high degree of coordination with coworkers (R. at 427), but does not include such a limitation in his mental RFC assessment (Doc. 25 at 5). First, arguments raised for the first time in a reply brief are waived and will not be considered by the court. Water-Pik, Inc. v. Med-Systems, Inc., __ F.3d ___, 2013 WL 4046470 at *21 n.8 (10th Cir. Aug. 12, 2013); Lynch v. Barrett, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013). Second, even if the court were to consider the issue, none of the 20 categories under Section I of the mental RFC assessment mentions whether a claimant has the ability to engage in a "high degree of coordination with coworkers," although Dr. Blum found that plaintiff was not significantly limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes(# 15) (R. at 429-430). In section III of the mental RFC assessment, Dr. Blum found that plaintiff generally had moderate limitations in social functioning (R. at 431). It is not unreasonable to conclude that a moderate limitation in social functioning would incorporate Dr. Blum's earlier statement that plaintiff perform only jobs that do not require a high degree of coordination with coworkers, especially considering the fact that Dr. Blum prepared both the statement and the mental RFC assessment. In light of the fact that Dr. Blum's statement and RFC findings are not clearly inconsistent, the court finds no error by the ALJ in relying on Dr. Blum's mental RFC assessment, and not including a statement in the notes from the PRTF form.

determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination

which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Plaintiff argues that the evidence regarding plaintiff's turbulent history shows more than moderate limitations of social functioning and concentration (Doc. 17 at 6). However, the ALJ could reasonably rely on Dr. Blum's conclusion that plaintiff

only had moderate limitations in those categories (R. at 425, 431), especially in light of the fact that no medical evidence indicates that plaintiff has more than a moderate limitation in these categories. Plaintiff's argument seeks to have the court engage in an impermissible reweighing of the evidence, and to substitute the court's judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).

Plaintiff also takes issue with the ALJ's finding that plaintiff's testimony concerning his limitations is not consistent with the objective medical record (Doc. 17 at 6-7). When, as here, the ALJ indicates that he has considered all the evidence, the court's practice is to take the ALJ at his word. Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009). Furthermore, the ALJ's RFC findings are based on medical opinion evidence. Plaintiff does not take issue with the ALJ's reliance on these medical opinions, and plaintiff fails to cite to any medical opinion evidence supporting more restrictive findings. The court will not reweigh the evidence. Substantial evidence supports the ALJ's conclusion.

Plaintiff argues that the ALJ erred by relying on the fact that plaintiff "has mild degenerative joint disease in his knees" because the ALJ cannot rely on his own opinion to translate these findings into vocational limitations (Doc. 17 at 7-8). However, it was Dr. Warren who affirmed a physical RFC

assessment which expressly noted plaintiff's mild degenerative joint diseases in the knees in support of their findings (R. at 434, 442). The ALJ, as noted above, included the limitations in the assessment in her RFC findings, and asked the VE to look at the physical RFC assessment when determining plaintiff's ability to perform other work in the national economy.

The ALJ also stated that, upon examination, plaintiff exhibited "some" difficulty with orthopedic maneuvers (R. at 18). Plaintiff alleges this misstates the consultative report from Dr. Cornett (Doc. 17 at 7). Dr. Cornett found that plaintiff had mild difficulty getting on and off the exam table, had mild difficulty with heel and toe walking, had severe difficulty squatting and arising from the sitting position, and had severe difficulty hopping (R. at 394). The court finds no clear error when the ALJ summarized the findings as indicating some difficulty with orthopedic maneuvers. Furthermore, the physical RFC assessment took into account Dr. Cornett's report, including his finding that plaintiff had mild to severe difficulty performing orthopedic maneuvers (R. at 435). The ALJ included the limitations contained in that assessment in her RFC findings and in her hypothetical question to the VE.

The ALJ also noted plaintiff's financial interest in the outcome (R. at 18). Although plaintiff takes issue with the ALJ's reliance on this fact (Doc. 17 at 9), it is certainly a

factor that the ALJ can take into account.  The court finds no clear error when the ALJ considers this as one of many factors when analyzing plaintiff's credibility.

The ALJ also noted that plaintiff made inconsistent statements that he quit his job at Air Capital Delivery versus being fired for not taking a UA.  Although plaintiff takes issue with the ALJ's reliance on these inconsistent statements (Doc. 17 at 9), the record does confirm inconsistent statements regarding why he left this job (R. at 18, 40-41, 695, 758).  The court finds no error in the ALJ's reference to his inconsistent testimony.

Plaintiff asserts that the ALJ erred in her credibility analysis by failing to consider the possibility that psychological disorders combine with physical problems in evaluating the severity of pain (Doc. 17 at 8).  In evaluating credibility, this is one of the many factors that the ALJ should consider.  However, so long as the ALJ sets forth the specific evidence she relied on in evaluating the claimant's credibility, the ALJ need not make a formalistic factor-by-factor recitation of the evidence.  Common sense, not technical perfection, is the court's guide.  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).  The ALJ set forth the specific evidence she relied on in evaluating plaintiff's credibility, and the court has found no clear errors in the ALJ's credibility analysis.

Therefore, the court finds that the ALJ did not err because she did not expressly mention this specific factor.

Plaintiff also takes issue with the fact that the ALJ mentioned that plaintiff had not been prescribed narcotic pain medication (Doc. 17 at 8). However, plaintiff does not take issue with the accuracy of the statement. The court finds no clear error in the ALJ correctly stating the evidence in the case, including the fact that plaintiff was not prescribed narcotic medication. Even if the court had some concern with the ALJ's reliance on this information, the court concludes that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record. Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 4th day of September, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge